THE STATE, EX REL. EDWIN E. ADAMS, v. WILLIAM P. YOUNG.

Submitted February 1, 1928—Decided February 15, 1928.

Before Justices PARKER, MINTURN and CAMPBELL.

For the relator, *Waddington & Mathews.*

For the respondent, *Robert Peacock.*

PER CURIAM.

The relator is a citizen of the city of Burlington, and files this information in the nature of a *quo warranto* by leave of the court as provided by section 1 of the statute (*Comp. Stat., p.* 4210) to test the right of the respondent, Young, to hold the office of councilman of said city. The gravamen of the information is that while serving a three-year term as councilman, the relator was elected and qualified as an alderman of the city, and that this vacated *ipso facto* his tenure of the office of councilman on the ground of incompatibility of the two offices. *State* v. *Thompson,* 20 *N. J. L.* 689. The

facts are in the record and also are stipulated, trial by jury is waived, and the matter is thus made one of law for the court. The only real question for consideration is the incompatibility of the two offices, and this is to be settled by examination of the city charter and other statutes applicable, if any. It is suggested that any conflict of offices was cured by the resignation of respondent as alderman about ten days after he qualified as such; but if his qualification as alderman vacated the office of councilman, the damage was done and a subsequent resignation as alderman would not help the matter. It is further suggested that relator is in laches because respondent was allowed to serve a whole year as councilman. But conceding for present purpose what is at least most doubtful, that the doctrine of laches applies in a case of this kind, the answer is that the application was made to the court within a very few days after the qualification of respondent as alderman at the beginning of the year 1928.

We proceed, then, to an examination of the charter. *Pamph. L.* 1851, *p.* 149; amended in 1857, *Pamph. L., p.* 17, and 1868, *Pamph. L., p.* 494. By section 3 of that instrument, there shall be chosen one mayor, three aldermen and eleven members of council (increased to twelve by the amendment of 1868). All are elected by the legal voters of the city. The council is the actual legislative body; the aldermen and mayor are constituted justices of the peace *ex officio,* but with no power to try civil cases except such as arise under an ordinance or by-law of the city (penalties, &c.), under the charter, they constitute the local judicial department as council constitutes the legislative; so that when we consider that the whole scheme of local government is laid down by this one statute, and that the separation of legislative and judicial departments was at that time one of the fundamental ideas of civil government in this state, we cannot but conclude that the legislature never intended that the same person should hold office in each of those departments; a situation certain to produce a confusion in administration, as, for example, entrusting to the same person the enforcement of an ordinance, which he had taken part in enacting, we hold, therefore, that

by the scheme of the charter the offices of alderman and councilman were inconsistent, and incompatible with each other.

The further suggestion is made that by an ordinance of 1892 certain police justices were authorized and appointed, with all the jurisdiction previously exercised by the aldermen, so that the occupation of the latter is now gone. No statutory authority for such an ordinance is cited; it may be supported by general laws; but we are not pointed to any legislative provision abrogating or impairing the jurisdiction of the aldermen under the charter.

Our conclusion is that there must be a judgment of ouster of the respondent as councilman, with costs.